# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs February 5, 2014

## STATE OF TENNESSEE v. EDWARD BROWN

**Direct Appeal from the Criminal Court for Shelby County**
**No. 1006282      W. Otis Higgs, Jr., Judge**

**No. W2012-02573-CCA-R3-CD  -  Filed March 19, 2014**

The defendant, Edward Brown, was convicted of attempted second degree murder, a Class C felony, and reckless endangerment, a Class A misdemeanor. The defendant was sentenced to eight years at thirty percent as a Range I offender for his attempted second degree murder conviction and eleven months and twenty-nine days for the reckless endangerment conviction. On appeal the defendant argues that the evidence was not sufficient to sustain a conviction for attempted second degree murder and that the trial court erred in admitting photographs of the crime scene and of the injuries to the female victim. Having reviewed the record, we conclude that the evidence was sufficient to sustain the conviction for attempted second degree murder and that the trial court did not err in admitting the photographs. Accordingly, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which ALAN E. GLENN and CAMILLE R. MCMULLEN, JJ., joined.

Terita Hewlett Riley, Memphis, Tennessee, for the appellant, Edward Brown.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Senior Counsel; Amy P. Weirich, District Attorney General; and Carla Taylor, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant was originally indicted for one count of attempted first degree premeditated murder and one count of aggravated assault. The charges against the defendant stem from an incident that occurred on April 14, 2010, between the defendant and two victims: his ex-girlfriend and her new boyfriend. However, following a jury trial, he was

found guilty of the lesser included offenses of attempted second degree murder and reckless endangerment.

## Facts

The charges against the defendant arose from his involvement in an attack on his ex-girlfriend and her new boyfriend, the male and female victim. The defendant and the female victim had been in a relationship for over ten years, but five or six months prior to the April 14, 2010 incident the female victim had ended the relationship. However, she continued to allow the defendant to reside in the downstairs portion of her apartment on the condition that he did not bring other women to the house. While the defendant did not pay rent per se, he did contribute financially "when he got something."

The female victim testified that, on the evening in question, she discovered that the defendant had brought a woman into the apartment, and an argument ensued between her and the defendant. The female victim told the defendant to leave "because he ain't [sic] supposed to have no woman in my house." When she told the defendant that he needed to leave, he responded that "you'll be dead in about 30 minutes anyway." The female victim believed that the defendant was "just talking" because he had threatened her life with words "many times before."

The female victim went to unplug the defendant's washing machine "[s]o he could take everything that he had with him," but she was unable to disconnect the machine. She summoned the male victim for assistance. The two went into the kitchen where the defendant and female victim continued to argue. The female victim asked the male victim to leave, and he exited the apartment. The defendant closed and locked the door, but the male victim observed him pull two knives out of his pocket.

The female victim was able to unlock the door, allowing the male victim back into the apartment. The male victim witnessed the defendant holding the female victim by her belt as he "hit [] her up under the arm" with one of the knives. As the male victim retreated, he tripped over the couch, and the defendant "stuck him" in the arm. The female victim pulled the defendant back and told him to stop. The male victim kicked the defendant under his chin, briefly stopping the attack. Once the defendant fell to the floor, the defendant stabbed the male victim a second time in the abdomen. The male victim exited the apartment at this point.

The defendant pushed the female victim over a table onto the couch, stepped over the table, got on top of her, and started "sticking" her while she was on the couch. At this point, the female victim and her daughter were alone in the apartment with the defendant. The female victim's daughter was screaming at her mother as the defendant was stabbing the

-2-

female victim with the knife. The female victim tried to hold off the defendant begging him to "please stop. You ['re] killing me. Please stop."

The female victim, fearing that the defendant would stab her daughter as well, urged the girl to "run and call the police and get help," which her daughter did. The defendant continued stabbing the female victim, but he eventually stopped. The female victim said, "[H]e just stood over me looking at me for a while. And then he got up and he went to the door and he went out of the door." The female victim went to the porch and saw that the defendant remained on the porch looking "like he was fixing to come back at me but he turned around and ran."

The female victim saw her daughter across the street and walked over and rejoined her daughter prior to returning to her apartment. Upon her return, she "made it right there to the door. When I stepped - - as soon as I stepped in the door, I leaned up against the wall and I went down the wall and then I just went over to the side and I fell out the door. My back was outside on the porch and my legs was [sic] in the house." After the ambulance arrived, the female victim was rushed to the hospital where she received extensive treatment for her stab wounds. When the female victim's mother arrived at the hospital, she was informed to "start making funeral arrangements cause [sic] they thought" that the female victim was going to die. The victim underwent multiple surgeries and remained hospitalized for a little over two weeks.

The male victim, who had returned to the scene shortly after the defendant left, was also taken to the hospital for treatment of his wounds. He also underwent surgery.

Based upon these events, the defendant was indicted for attempted first degree premeditated murder and aggravated assault. A jury trial was held at which multiple witnesses testified. The male and female victims testified as to the above described events. The State also called the female victim's daughter who testified that she witnessed the defendant stabbing the male victim and her mother.

Officer James Walton of the Memphis Police Department ("MPD") responded to the scene, and he stated upon arrival he observed the female victim in the doorway with "multiple, multiple, stab wounds." He testified that he witnessed the female victim leaned up against the frame of the door with one of her legs inside the doorway and the other one of her legs outside the doorway. He further stated that he did not need to ask the victim where she had been stabbed because "I could see . . . I mean, everywhere I looked I saw stab wounds."

The State then called Andrew Hassler, who was employed by the MPD and testified

that he attended to the female victim at the scene. He stated that when he arrived "I observed a female laying in the doorway facedown stating that she had been stabbed. And I noted she had several stab wounds to her back. And during my evaluation and patient care, when we rolled her over to the other side we noted several more stab wounds to the abdomen and chest. And we provided patient care and transported her to the hospital." Mr. Hassler further testified that when the female victim was transported to the hospital the ambulance was utilizing its lights and sirens because she was in critical condition.

Anthony Hillard, with the Memphis Fire Department, testified that he tended to the male victim and observed that he had two stab wounds and noticed blood on his clothes. He testified, "[m]y report says that he had a stab wound to his left biceps area and the right upper quadrant of his abdomen." He further stated that he treated the two stab wounds and started an IV on the male victim. He did not think that the male victim was transported to the hospital with emergency lights and sirens but that the male victim did go into the shock trauma room at the hospital.

Officer David Payment, a crime scene officer with the MPD, stated that he went to the scene and that his duties were to collect evidence and do an investigation for a possible assault. He stated that protocol required crime scene officers to do a rough sketch of a scene if a victim was transported in critical condition. He testified that he made a rough sketch of the scene, and the prosecution entered this sketch into evidence. While at the scene Officer Payment photographed a silver-colored knife with a black handle on the northwest bed. This knife appeared to have a broken tip. Officer Payment also photographed a three-inch blade in the living room. Officer Payment further testified that there was "a bunch of red substance on the ground and spattered portions, possibly blood."

After the State's proof, the defendant testified on his own behalf. The defendant testified that he was getting ready to "retire" around midnight of April 14, 2010, when both victims entered the apartment. He stated that the female victim entered the apartment shouting and using profanity and demanding money. He further testified that both the female and male victims threatened him, and that the male victim dismantled the defendant's bed upon request of the female victim. He stated that the female victim then began to attempt to destroy his washing machine. The defendant stated that he had a "run-in" with the male victim before; that the male victim had entered his apartment several times and tried to intimidate the defendant, making sure that the defendant saw the weapons that the male victim had. He testified that "[e]ach time he [the male victim] came into the apartment he had a pistol or a sawed-off shotgun."

The defendant stated that the female victim started throwing his clothes out of the apartment and ordered him to leave. The defendant testified that he was willing to comply

and went to charge his cellular telephone in order to call his daughter to come pick him up. He stated that the female victim prevented him from making this call by pulling out a knife, cutting the phone charger cord, and throwing the phone on the ground. In the process she cut the defendant across the nose.

The defendant stated he began wrestling with the female victim for possession of the kitchen knife and that they fell onto the couch. He testified that he fell on top of the female victim and that the male victim was hitting him from behind. The defendant stated that the female victim was attempting to push the knife into his chest and that he was attempting to keep the knife down.

The defendant testified that the male victim "went into his [the male victim's] pocket" and that he assumed the male victim was reaching for a weapon. He further testified that he told both victims that in "a matter of time I would be, you know, doing -- you know, living well." He testified that both victims told him that he might not be living. He stated that eventually he was able to leave the scene, and he was in fear of his life.

On cross-examination, the defendant testified that the female victim received her injuries while wrestling for the knife. The defendant stated that he was attempting to prevent the female victim from stabbing him and that the female victim was attempting to rob him. He testified that neither of the knives were his, and that, while he did not see the male victim with a gun that night, he had seen him with guns several times prior to the incident.

After hearing the evidence, the jury convicted the defendant of the lesser included offenses of attempted second degree murder and reckless endangerment. He received an effective sentence of eight years to be served in the Tennessee Department of Correction. Following the denial of his motion for new trial, the defendant filed a timely notice of appeal.

**Analysis**

The defendant raises two issues for consideration on appeal. First, he argues that the weight of the evidence was not sufficient to sustain a conviction for attempted second degree murder. Second, he argues that the trial court abused its discretion by admitting prejudicial photographs into evidence.

**A. Sufficiency of the Evidence**

This court shall set aside a verdict of guilty only "if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). On appellate review, the relevant inquiry is "whether, after viewing the evidence

in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

In determining the sufficiency of evidence this court may not re-weigh or re-evaluate the evidence. Nor may this court substitute its own inferences drawn from circumstantial facts for those drawn by the trier of fact. *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004). Courts instead must afford the State "the strongest legitimate view of the trial evidence and all reasonable or legitimate inferences which may be drawn therefrom" because "all conflicts in testimony, upon a conviction by a trial court, are resolved in favor of the State." *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978).

A trial court's approval of a verdict of guilty by a jury "accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973).

A guilty verdict "removes the presumption of innocence and replaces it with a presumption of guilt" and places the burden on the defendant to demonstrate that the evidence was insufficient to support the verdict of the jury. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). A finding of guilt may be supported by direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). This standard of review applies "'whether the conviction is based on direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

Tennessee Code Annotated section 39-13-210(a)(1) defines second degree murder as "[a] knowing killing of another." "A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause a result." T.C.A. § 39-11-302(b) (2012). A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense:

> (1) Intentionally engages in action or causes a result that would constitute an offense, if the circumstances surrounding the conduct were as the person believes them to be;

> (2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or

> (3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the

commission of the offense.

T.C.A. § 39-12-101.

The defendant argues that while it is undisputed that both victims were stabbed, the State did not prove that he knowingly attempted to kill the female victim. Specifically, he argues that the trier of fact did not find the essential elements of the crime because nothing exists in the record to prove that the defendant knowingly attempted to kill the female victim. The jury heard testimony from both victims and the female victim's daughter that the defendant first stabbed the male victim and next stabbed the female victim. The jury also heard the defendant's version of events; that the female victim attacked him first and that she was stabbed as a result of the defendant attempting to defend himself. The jury weighed the testimony and chose not to accredit the testimony of the defendant. The trier of fact resolves all questions of witness credibility, the weight and value to be given to the evidence, as well as all questions of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). This court will not reweigh or reevaluate the evidence. *Id.*

Both of the victims and the female victim's daughter testified that the defendant first stabbed the male victim and next stabbed the female victim. Photographic evidence was introduced to demonstrate the extent of the female victim's injuries. Both victims were transported to the hospital via ambulance after paramedics arrived on the scene. The evidence in this case, viewed in a light most favorable to the State, is more than sufficient to support a conviction of attempted second degree murder. The defendant is not entitled to relief on this claim.

## B. Admission of Photographs

The admissibility of photographs lies within the sound discretion of the trial court whose ruling will not be overturned on appeal except upon a clear showing of an abuse of discretion. *State v. Banks*, 564 S.W.2d 947, 949 (Tenn. 1978); *State v. Lacy*, 983 S.W.2d 686, 694 (Tenn. Crim. App. 1997). "Tennessee courts follow a policy of liberality in the admission of photographs in both civil and criminal cases." *State v. Morris*, 24 S.W.3d 788, 810 (Tenn. 2000). Nevertheless, the photograph must be relevant to an issue at trial with its probative value outweighing any prejudicial effect that it may have upon the trier of fact. *State v. Vann*, 976 S.W.2d 93, 102 (Tenn. 1998); *State v. Braden*, 867 S.W.2d 750, 758 (Tenn. Crim. App. 1993).

We, therefore, must first determine whether the photographs were relevant. Relevant evidence is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would

be without the evidence." Tenn. R. Evid. 401. However, a trial court may exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403. Evidence is unfairly prejudicial if it has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily an emotional one." *Banks*, 564 S.W.2d 947 at 951.

The defendant argues that the trial court abused its discretion by allowing multiple photographs into evidence that depicted blood on the front porch of the apartment where the incident occurred and photographs of the female victim's injuries. Specifically, the defendant objected to the photograph of blood on the porch on the grounds that it was cumulative and objected to the photograph of the injuries as prejudicial. After carefully reviewing the record, we cannot conclude that the trial court abused its discretion by allowing the photographs to be entered into evidence. The trial judge examined the photograph and determined that it was not cumulative. The photograph was the second photograph admitted into evidence that showed blood on the front porch. The second photograph was taken from a closer distance. The photograph was relevant to supplement and corroborate the testimony of the female victim and to help illustrate the extent of her injuries.

The photographs of the injuries to the female victim were not unfairly prejudicial. The trial court determined that the probative value of the photographs outweighed the prejudice to the defendant. The first photograph depicted an injury to the victim's right arm, and the second showed a wound on the victim's stomach. The wound to the stomach was large and had been treated with stitches. However, both of these photographs were taken at the hospital, and very little blood was visible. The photographs were not unnecessarily gruesome or gory. The photographs were relevant to illustrate the extent of the female victim's injuries and to corroborate her testimony that the defendant stabbed her. Further, it does not affirmatively appear that the outcome of the trial was affected by the admission of the photographs. *See Banks*, 564 S.W.2d 947 at 953. Thus, the defendant is not entitled to relief on this issue.

## Conclusion

Based upon the foregoing, we conclude that the evidence was sufficient to support a conviction for attempted second degree murder and that the trial court did not abuse its discretion by admitting the photographs into evidence. Accordingly, the judgments and conviction and sentences are affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE

-8-